BARRET *vs.* GRACIE.

When the facts upon which an order of arrest is granted are the same facts which constitute the cause of action, the order of arrest cannot be discharged; unless the defendant clearly makes out such a case as would call on the judge presiding at the trial to either nonsuit the plaintiff, or direct a verdict for the defendant.

The decision in *Frost* v. *McCarger*, (14 *How. Pr.* 131,) approved. The cases of *Union Bank* v. *Mott*, (6 *Ab.* 315,) *Hernandez* v. *Carnobeli*, (4 *Duer*, 642,) and *Republic of Mexico* v. *Arrangois*, (11 *How. Pr. Rep.* 1,) commented on.

If A. places an article in the hands of B. to sell, the proceeds over and above the compensation of B., to be paid to A., B. becomes vested with a fiduciary capacity, and in the event of his selling the article, receiving the proceeds, and neglecting to pay over, he is liable to arrest.

Nor is the principle different where a price is fixed, which the agent is directed to realize, net. A principal may limit his agent, as to price, without destroying the fiduciary character.

MOTION to discharge an order of arrest. The complaint alleges that the plaintiff, at divers times in the month of November, 1860, to wit, on the 6th, 9th and 12th days of said November, by his agents, delivered to the defendant, who was doing business in the city of New York as a broker, divers bills of exchange on parties in England, for the aggregate sum of £9600 sterling, upon an agreement made with the defendant, whereby he agreed to sell said bills of exchange at certain specified rates per cent over and above his commissions for selling, and to pay the amounts so received by him, on the receipt thereof, to Wilbur & Price, agents for the plaintiff. That the total sum at which said Gracie was authorized to sell said bills of exchange, over and above his commissions, was $45,762.22. That said Gracie, prior to the 17th of November, 1860, sold all of said bills of exchange, and, on and prior to that date, received therefor the said sum of $45,762.22. That said Gracie, on and prior to the 16th of November, 1860, of the said money so received by him, paid to the plaintiff's said agents the sum of $33,873.33; but has failed to pay the balance of the money received by him for said bills, to wit, the sum of $11,888.89, and has appropriated the same to his own use. That the defendant is

Barret *v.* Gracie.

indebted to the plaintiff in said sum of $11,888.89, with interest from November 17, 1860, for said money so received by him belonging to the plaintiff. The judgment prayed for by the complaint is for the said sum of $11,888.89 with interest from November 17, 1860, besides costs of action.

BARNARD, J. The dates of the delivery of these bills with the number thereof delivered on those dates, the aggregate amount thereof, the rate at which they were to be sold, and the sum which they would produce if sold at those rates as the same are alleged in the complaint, will appear by the following schedule.

| Date. | No. of bills. | Aggr. amount. | Rate per cent. | Sum produced. |
|---|---|---|---|---|
| 1860, Nov. 6 | 3 | £2500 | $107\frac{3}{4}$ | $11,992 22 |
| "    "    9 | 6 | 4600 | $107\frac{1}{8}$ | 21,901 11 |
| "    "  12 | 4 | 2500 | 107 | 11,888 89 |
| | | Total, | | $45,762 22 |
| | | Payment, | | 33,873 33 |
| | | Balance, | | $11,888 89 |

It will thus be perceived that the proceeds of the bills delivered on the 6th and 9th of November have been paid to the plaintiff, and that this action is in fact brought for the proceeds of the bills delivered on the 12th. Upon the complaint and an affidavit supporting the allegations contained in it, an order of arrest was obtained by the plaintiff and the defendant arrested thereunder.

It will be seen that the facts constituting the cause of action and those constituting the grounds for arrest are the same. The defendant now moves on his own affidavit to vacate the order of arrest. The plaintiff, to sustain the order, reads his own affidavit and those of his agents, Jeremiah Wilbur and Joseph W. Price. The defendant's affidavit does not contradict or vary the case made by the complaint, except in the following three particulars : 1st. The defendant

swears that the various bills of exchange were sold to him by Wilbur & Price as their own property, at fixed prices, on a credit, and were not delivered to him as a broker to sell for the plaintiff, and to pay the proceeds of the sale over to the plaintiff or to Wilbur & Price, as agents for the plaintiff; and in this connection he sets out in his affidavit several instruments which he swears were given him by Wilbur & Price, and which he terms bills of sale of said bills of exchange. The following is a copy of that one of such instruments which refers to the bills of exchange delivered on the 12th of November, 1860 :

" ROB'T GRACIE        Bought of WILBUR & PRICE, 1860.   November 13.   £2500 stg. on London, at 107.00, $11,888.89.   Cash Saturday, 17th."

2d. The defendant swears that he did not know the plaintiff in any of the transactions, but dealt with Wilbur & Price as principals.   3d. The defendant swears that he did not receive, on the sale of the bills of November 12th, the sum of $11,888.89, but only the sum of $11,666.67.   It is alleged in the affidavits on behalf of the plaintiff, and not controverted by the defendant's affidavit, and therefore, for the purpose of this motion, must be taken as true, that the plaintiff was the owner of the bills of exchange, and was and is entitled to the proceeds thereof; that Messrs. Wilbur & Price were the agents of the plaintiff; that the defendant was a broker doing business in the city of New York; that Wilbur & Price delivered to the defendant the bills of exchange above mentioned, at the dates and at the rates specified; that the defendant has sold all of said bills of exchange, and has paid to Wilbur & Price the sum of $33,873.33.   That said sum of $33,873.33 is the net amount, less commissions, which the sale of those bills of exchange that were delivered prior to November 12th, at the rates at which they were delivered to the defendant, would have produced.   That the defendant has received, on the sale of the bills delivered on the 12th of

Barret *v.* Gracie.

November, the sum of $11,666.67, which he has not paid over. The two questions in the case therefore are,

1st. Were the bills of exchange delivered to the defendant on an absolute sale thereof to him on credit; or were they delivered to him as a broker, in a fiduciary capacity, to be by him sold for the plaintiff, and when sold the proceeds of the sale to be paid over by him to the plaintiff or his agent?

2d. Was the transaction one between the defendant and the plaintiff through his agents, Wilbur & Price, or one between the defendant and Wilbur & Price?

On these two points the case stands thus: The defendant swears that the bills were delivered to him on an absolute sale thereof to him, and that he never knew or heard of the plaintiff in all of his transactions with Wilbur & Price, but that on the contrary all of his transactions with Wilbur & Price were with them as principals and not as agents. Messrs. Wilbur & Price both swear that the bills were delivered to the defendant in his capacity as broker, to sell the same at not less than a certain rate over and above his commissions, and to pay so much of the proceeds of the sales as should amount to said rates, to them as the agents of the plaintiff. They also swear that as to the bills delivered on the 12th of November they informed the defendant that the plaintiff was the owner of the bills, and that they could not permit him to sell them for less than 107 per cent, net, to his customers, and if he did not sell for that amount he must return the bills. It may be conceded that the defendant by his affidavits contradicts all these statements of Messrs. Wilbur & Price. The preponderance of the testimony, however, (there being two oaths to one,) is clearly in favor of the plaintiff, unless there are some facts and circumstances sustaining the defendant's affidavit so strongly as to outweigh the force of the two opposing oaths. The defendant's counsel insists that such a fact and circumstance is to be found in the form of the instruments called bills of sale. I will not inquire into

the force of these instruments if entirely unexplained, because the plaintiff has tendered an explanation.

Both of the plaintiff's agents swear that the defendant and other brokers are not in the habit of disclosing the names of their customers, and that memoranda in the form of the bills of sale referred to in the defendant's affidavit are made for convenience, to fix the sum at which the bills of exchange are to be sold, and the name of the broker is inserted because the name of his principal is not known, and that it is a custom among agents doing business for non-resident principals, and among brokers who do not wish to disclose the names of their customers, to make out memoranda like the instruments called bills of sale set out in the defendant's affidavit, when it is well understood and known that they are acting as mere agents or brokers, and that such was the case in their (the plaintiff's agents) transactions with the defendant. Both of the plaintiff's agents also swear that they always fixed the price at which said defendant might sell the bills of exchange net-over his commissions, and the defendant was allowed for his commissions all he obtained over the price so fixed on, and that the instruments set out in the defendant's affidavit and designated therein as bills of sale, were memoranda made merely to fix the amount at which the defendant might sell, and the defendant's name inserted because the defendant did not wish to disclose the names of his customers to the purchasers. When we take into view the clearly proven fact that Messrs. Wilbur & Price were not authorized by their principal (the plaintiff) to sell on credit, this explanation seems to be, for the purpose of this motion, a sufficiently reasonable and proper one, and these instruments, thus explained, do not add to the defendant's affidavit such force as to show clearly that the plaintiff has no cause of action. I use the term "for the purposes of this motion," for I do not intend on this application to dispose of the whole merits of the controversy. In my opinion, when the facts upon which the order of arrest is granted are the

Barret *v.* Gracie.

same facts which constitute the cause of action, the order of arrest cannot be discharged, unless the defendant clearly makes out such a case as would call on the judge presiding at the trial to either nonsuit the plaintiff or direct a verdict for the defendant; or in the words of Justice Marvin in the case of *Frost* v. *McCarger*, " the court should not in the class of cases we are considering, (that is, cases where the facts constituting the cause of action and authorizing the arrest are the same,) vacate the order of arrest, unless the facts show clearly that the plaintiff has no cause of action. If the plaintiffs raise a fair question for the jury, upon the merits of the action, the court should not interfere." It is unnecessary for me here to give my reasons in full for this opinion, as they will be found in the well considered opinion of Justice Marvin in the case of *Frost and others* v. *McCarger*, (14 *How.* 131.) This point was neither distinctly presented, nor passed upon, in the cases of *Corwin* v. *Freeland*, (2 *Seld.* 565,) and of *The Union Bank* v. *Mott*, (6 *Abb.* 315;) and those cases cannot be considered authority on this point. Justice Marvin, in his opinion, comments on the case of *Corwin* v. *Freeland*, and shows that it has no application to the point now in question. He also reviews the cases of the *Republic of Mexico* v. *Arangois*, (11 *How.* 1,) and *Hernandez* v. *Carnobeli*, (4 *Duer*, 643,) decided at special term of the superior court by Justice Hoffman, and upon good and valid grounds dissents from that justice's conclusions on this point. There is no reported special or general term decision of this district upon this question, and no reported general term decision of the other districts.

I am therefore at liberty to follow and adopt such special term decisions of any of the other districts as by the force and power of its reasoning commends itself to my judgment. This decision of Justice Marvin so commends itself, and is therefore adopted by me. In this case, the facts constituting the cause of action and authorizing the arrest, are the same, and therefore the affidavits on these points as to whether the

Barret *v.* Gracie.

bills were delivered to the defendant on an absolute sale thereof to him, or were delivered to him in his capacity as broker, to sell at not less than certain fixed prices and pay over the proceeds, and as to whether the defendant dealt with Messrs. Wilbur & Price as principals without knowing that they were acting as agents, or dealt with them as agents of the plaintiff, knowing them to be such agents, and knowing that the bills belonged to the plaintiff, raising fair questions for the jury upon the merits of the action, and it not appearing clearly that the plaintiff has no cause of action, the motion to discharge the order of arrest must be denied, unless either one or both of the following points is well taken. 1st. Assuming that the bills of exchange were delivered to the defendant as a broker, to sell at prices not less than certain sums net over his own commissions, and to pay the proceeds to the plaintiff, did this transaction vest the defendant with a fiduciary character ? 2d. Is this action authorized by the plaintiff ?

As to the first of these two propositions, I shall assume that this abstract proposition is well established law, viz : that if A. places an article in the hands of B. to sell, the proceeds, over and above the compensation of B. to be paid to A., then B. becomes vested with a fiduciary capacity, and in the event of his selling the article, receiving the proceeds and neglecting to pay over, is liable to arrest. In what respect does this case differ from the one put ? Here, it is true, there is a price fixed which the defendant was directed to realize, net. A man can surely limit his agent as to price without destroying the fiduciary character. It is not an essential to the fiduciary character that the agent should be vested with absolute discretionary power as to the price at which he should sell, nor that he should be paid for his services according to a customary rate.

In *Holbrook* v. *Homer*, (6 *How.* 86,) it was held that an auctioneer who receives goods for sale, under an agreement that he is to receive all over a certain amount of the proceeds

Barret *v.* Gracie.

for his compensation, is liable to arrest for the non-payment of the proceeds. The fact then that the plaintiff's agents fixed the price at which the defendant might sell, and allowed him to retain all above that price for his commissions, does not destroy the otherwise fiduciary character of the defendant. The defendant paying by his own check is urged as another consideration. I am not inclined, however, to hold that the fiduciary relation can be destroyed by reason of the agent depositing the money he receives and paying it over by his check drawn thereon, instead of paying over the identical money or checks which he receives.

This first of the two propositions is not well taken.

As to the second of the two propositions, it is sufficient to say that the plaintiff appears by officers of this court, and that he has made an affidavit to support the order of arrest.

This proposition is not well taken.

In my views above expressed I do not intend to indicate what would be my decision in case the action was submitted to me as to a jury to pass upon. But I merely hold that the defendant has not made out so clear a case as to entitle him to a discharge of the order of arrest. Upon a trial of the cause, the jury passing upon the merits having greater opportunities for testing the truth, will, untrammeled by this decision, dispose of all the issues in this action, with which disposition the order of arrest will either stand or fall.

Motion denied, with $10 costs.

[NEW YORK SPECIAL TERM, January 7, 1861. *Barnard*, Justice.]