WARNER, Respondent, vs. BATES, imp., Appellant.

*November 12 — December 3, 1889.*

*(1) Fraudulent representations: Corporate stock: Pleading. (2, 3)*
*Arrest and bail: Vacating order.*

1. In an action to recover the amount paid for worthless mining stocks, on the ground that such payment had been induced by false and fraudulent representations as to the value of said stocks, the productiveness of the mines, and that the corporations issuing the stocks were legally organized and duly authorized to issue the same, it was alleged in the complaint and in an affidavit for defendants' arrest that they represented that the stocks had been issued in consideration of money, labor, and property estimated at its true value, equal to seventy-five per cent. of the par value of such stocks. *Held,* that this allegation may be construed as having been made merely to show that the defendants claimed that the stocks were of great value, and not to show that they represented that the stock was legally issued.

2. When the facts which constitute the cause of action stated in the complaint are the grounds stated in an affidavit for the defendant's arrest, the order of arrest based thereon will not be set aside on motion because such facts are controverted by the proofs of the defendant presented on such motion.

3. The fact that the plaintiff cannot recover as to a part of his claim may be ground for reducing the amount of the defendant's bail on arrest, but is not ground for setting aside the whole order of arrest.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleges, among other things, that on and prior to December, 8, 1886, the defendants N. D. Moore, Laura D. Benjamin, and Elizabeth M. Bates were copartners under the firm name of Moore, Benjamin & Co., and engaged in the business of buying and selling mining stocks at Milwaukee, and that the defendants, Henry S. Benjamin, the husband of said Laura D. Benjamin, and *F. A. Bates*, the husband of said Elizabeth M. Bates, represented and were the managers and agents of their wives respectively, being duly authorized thereto, in all of the business transactions of said firm; that the plaintiff had the closest, social and most friendly relations with the defendants Benjamin, and they had her unlimited confidence; that at the time aforesaid the plaintiff owned real estate in Milwaukee worth at least $20,000; that the defendants were the owners of large amounts of mining stock, and, well knowing the facts above stated, did unlawfully, wickedly, and maliciously conspire and combine together to procure the plaintiff to sell and dispose of her said real estate and with the proceeds of such sale to purchase of the defendants certain of said mining stocks, and thereby to cheat and defraud the plaintiff.

The complaint then alleges that in pursuance of such conspiracy, and taking advantage of the plaintiff's confidence in the defendants Benjamin, the defendants importuned and solicited the plaintiff to sell her said real estate

and purchase from them said stocks, and falsely and fraud-
ulently represented to her that certain pretended corpora-
tions respectively pretending to do and carry on business,
and which had respectively issued shares and certificates of
stock, had each and all been duly and legally organized and
incorporated; "that each and all of said pretended corpo-
rations had respectively issued their said respective stocks
and certificates of stock in consideration of money, labor,
and property estimated at its true money value, actually
received by said respective pretended corporations, equal
to seventy-five per centum of the par value of the said re-
spective stocks and certificates of stock of said respective
pretended corporations; that at least one half of the re-
spective capitals of said pretended corporations and each of
them had been duly subscribed, and at least twenty per
centum thereof actually paid in; that each and all of said
pretended corporations owned large tracts of valuable min-
eral lands; that all of said lands and the lands so owned
by each and all of said pretended corporations were pro-
ductive of, and were constantly producing, large and valu-
able quantities of iron ores and other minerals; that each
and all of said companies were being conducted, operated,
and carried on at great profit and gain; that the said re-
spective stocks and certificates of stock of said respective
pretended corporations were of great and increasing value;
that the said stocks and certificates of stock of said respect-
ive corporations were an abundantly safe and absolutely
sure and paying investment for capital, from which it was
impossible to suffer or sustain any loss; and that if the
plaintiff would sell her said real estate, and purchase of
them said stocks, she should suffer no loss therefrom. Each
and all of which said several statements and representa-
tions above set forth were false, which the defendants well
knew, and were by them so made as aforesaid for the pur-
pose of deceiving, misleading, and defrauding the plaintiff,

and inducing and procuring her to sell her said real estate and with the proceeds derived therefrom to purchase of the defendants the said stocks and certificates of stock by them so owned as aforesaid, and to cheat and defraud the plaintiff out of her said property and to cause her thereby to suffer great and irreparable damage, as aforesaid." The complaint alleges that the defendants also, in pursuance of said conspiracy, represented that the said stocks and certificates of stock of said pretended corporations were respectively worth certain amounts per share, when in truth and in fact they were all worthless, as the defendants well knew.

The complaint then alleges that the plaintiff, relying upon the false and fraudulent representations and pretenses aforesaid, and yielding to the solicitations and importunities of the defendants, sold her said real estate and out of the proceeds of the sale purchased the said stocks and certificates of stock in the quantities and for the sums stated, all of which sums she paid to the defendants in money; and that afterwards, still relying upon said false and fraudulent representations, she further purchased other of said stocks and certificates of stock, in payment for which she gave her promissory notes; that all of the stocks and certificates of stock so sold by the defendants are now and at all times have been absolutely null and void and of no value whatsoever; that by reason of the premises the plaintiff has suffered great damage, to wit, in the amounts paid as aforesaid for said stocks and certificates of stock, and the interest paid by her on said promissory notes, and the amount which she is still liable to pay thereon, less the amount received by her on the sale of a small portion of said stocks. Judgment is demanded accordingly.

It is not deemed necessary to state the allegations of the complaint in greater detail. The defendant *F. A. Bates* answered a general denial.

The plaintiff also made and filed an affidavit reiterating all the allegations of the complaint, stating that the defendants *F. A. Bates*, N. D. Moore, and Elizabeth M. Bates were not residents of the state, and praying for an order for the arrest of the defendants Henry S. Benjamin and *F. A. Bates*, pursuant to the provisions of ch. 122, R. S. An order for the arrest of said defendants was issued accordingly, signed by a court commissioner. Subsequently the defendant *F. A. Bates* applied to the circuit court for an order vacating and setting aside the said order of arrest, and discharging him from the legal effect thereof, on the grounds that (1) the said affidavit for the arrest of said *Bates* does not state any cause of action; (2) the said affidavit is defective in that it does not state any legal grounds for an arrest of said *Bates*, as required by law; (3) the said affidavit and order are otherwise defective, irregular, and void. On the hearing of the motion affidavits were presented on both sides. The court denied the motion, and from the order entered accordingly the defendant *F. A. Bates* appealed. Other facts are stated in the opinion.

*N. S. Murphey*, for the appellant, contended, *inter alia*, that an affidavit for an order of arrest should show (1) that the representations were material, (2) that they were calculated to deceive and to induce credit, (3) they must have been false to the knowledge of the party making them, at the time they were made, (4) they must have been believed by the plaintiff, (5) they must have induced the plaintiff to part with her property, and (6) that without such false representations the plaintiff would not have parted with her property. *Brown v. Ashbough*, 40 How. Pr. 240; *Smith v. Jones*, 4 Rob. (N. Y.), 656; *McGovern v. Payn*, 32 Barb. 83; *Thorpe v. Waddingham*, 3 Daly, 275; *Hubbel v. Meigs*, 50 N. Y. 489. And if a party embraces demands in which he is not entitled to the remedy of arrest, with those in which he is entitled to such remedy, the remedy is waived,

and the order is set aside. *Brown v. Ashbough*, 40 How. Pr. 238; *McGovern v. Payn*, 32 Barb. 83. An action for deceit in the sale of property does not lie for false and fraudulent representations concerning profits that may be made from it in the future. *Pedrick v. Porter*, 5 Allen, 324. Or for a mere expression of opinion. *Comm. v. Mechanics' M. F. Ins. Co.* 120 Mass. 495; *Marsh v. Falker*, 40 N. Y. 566; *Meyer v. Amidon*, 45 id. 169. A plaintiff cannot recover for fraud until he has actually paid or parted with his property. Giving a note is not payment. *Freeman v. Venner*, 120 Mass. 424; *Mercer v. Jones*, 3 Campb. 477; 2 Greenl. Evi. sec. 649; *Pasley v. Freeman*, 3 Term, 51; 2 Smith's·L. C. 157. The representation that the stock was issued and sold for seventy-five per cent. of its par value, was a representation that it was always absolutely void. R. S. sec. 1753; Laws of 1881, ch. 93.

For the respondent the cause was submitted on the brief of *Buxton, Rose & Bell.*

TAYLOR, J. This is an appeal from an order of the circuit court of Milwaukee county, denying a motion of the appellant to vacate and set aside an order of arrest made in said action, and to discharge the appellant, *Bates*, from arrest upon such order. The motion was made upon the pleadings in the action, the affidavit of the plaintiff upon which the order of arrest was based, and also upon the affidavit of the defendant *Bates* and others. On the hearing of the motion several affidavits were read on the part of the plaintiff.

On this appeal, it is insisted by the learned counsel that the affidavit of the plaintiff upon which the order of arrest was made is wholly insufficient to sustain the order. In this case the order of arrest is founded upon the affidavit of the plaintiff, and that affidavit sets forth at length and in detail the facts set up in the complaint. After a careful·

reading of the complaint and of the affidavit, it seems to us that upon the facts stated in the affidavit there can be no reasonable contention but that, if the facts stated in the affidavit constitute a cause of action, it states a cause of action in tort for obtaining money and property by false and fraudulent representations, and that the action is therefore an action in which the statute authorizes an arrest. See secs. 2689, 2691, R. S. The complaint in the action and the affidavit are of great length, and will not be set out in this opinion; but that the affidavit sets out facts sufficient to show that the plaintiff has a cause of action in tort against the defendants, including the appellant, cannot admit of a reasonable doubt. So much of the complaint and affidavit as is necessary to show the nature of the plaintiff's cause of action will be inserted in the report of the case.

The cause or causes of action stated in the complaint and affidavit are for obtaining money and notes of the plaintiff on the sale of certain mining stocks to her, alleging that she was induced to purchase the same, and pay her money and give her notes therefor, by reason of the false and fraudulent representation of the defendants as to the value of said stock, the productiveness of the mines which such stocks represented, and that the corporations by which such stocks were issued were legally organized and duly authorized to issue the same.

It is contended by the learned counsel for the appellant that the whole foundation of the plaintiff's claim is swept away because she has alleged in her affidavit, among other things which she declares to be false, that it was represented to her " that all the pretended corporations had been duly and legally organized and incorporated; that each and all of said pretended corporations had respectively issued their said respective stocks and certificates of stock in consideration of money, labor, and property estimated at its true money value, actually received by said respective pretended

corporations, equal to seventy-five per centum of the par value of the said respective stocks and certificates of stock of said respective pretended corporations." It is said that this allegation shows conclusively that the plaintiff could not have been defrauded in the purchase of said stocks, because this representation notified her that such stocks were illegal and void and could have no value. This contention of the learned counsel is, we think, sufficiently answered by the counsel for the respondent, " that this allegation was made in the complaint, not for the purpose of asserting that the defendants made it as showing that the corporations were legally organized, but merely for the purpose of showing that the defendants claimed that the stocks offered for sale to her were of great value, because the corporations were supposed to have received valuable property and large amounts of money thereon." This construction of this allegation is sustained by the fact that it is immediately afterwards alleged that the defendants represented " that at least one half the capital of said respective corporations had been duly subscribed, and at least twenty per centum thereof actually paid in." This last representation would show a legal organization of the corporations. The affidavit then alleges, among other things, that these representations as to the stock having been issued for seventy-five per centum of their par value in money or other property, and that one half of the capital of said corporations had been duly subscribed, and at least twenty per centum thereof actually paid in, were false, and that in fact " said corporations had never issued their respective stocks and certificates of stock in consideration of money, labor, and property estimated at its true money value, actually received by said companies respectively, equal to seventy-five per centum of the par value of the said respective stocks and certificates of stock of said respective corporations, or in consideration of any money, labor, or property whatsoever,

or for or upon any consideration of any nature or kind."
If these allegations in regard to the issuing of the stocks
by these corporations were stricken out of the complaint
and affidavit, there would still be sufficient remaining to
constitute a cause of action. If the plaintiff's case depended
wholly upon the invalidity of the stock sold to her as valid
stock of the corporations, and she sought to recover upon
that ground alone, there might be some force in the objec-
tion that she knew, or must be held to have known, of such
invalidity; but that is not the real ground of her action.
Her right to recover is based as well upon the worthless-
ness of the stock, admitting that it was legally issued, as it
was upon the fact that it was illegally issued; and, if it
were possible that she could be estopped from showing that
the stock was worthless because illegally issued, she clearly
would not be estopped from showing that it was worthless
because the corporations issuing the same were bankrupt
and worthless corporations, and the stocks valueless for
that reason.

It is also claimed by the learned counsel for the appellant
that the affidavits of *Bates* and Benjamin, read on the hear-
ing of the motion, show that *Bates* had nothing whatever
to do with negotiating the sales of the stocks to the plaint-
iff; that the sales were made by Benjamin alone, on behalf
of Moore, Benjamin & Co. *Bates* was not a member of
the firm of Moore, Benjamin & Co., but his wife was, and
he, as her agent, represented her in all the transactions of
the company. The complaint and the affidavit both allege
that *Bates*, as agent of his wife, aided and assisted in mak-
ing the sales to the plaintiff, and made the false representa-
tions set out in the affidavit; and this allegation in the
affidavit and complaint is confirmed by other testimony of-
fered by the plaintiff on the hearing of the motion. The
rule seems to be pretty well established in New York
courts, under a statute like ours, that when the facts which

constitute the cause of action stated in the complaint are the ground for the arrest as stated in the affidavit, the courts will not upon motion set aside the order of arrest because the facts stated in the complaint and affidavit are controverted by the proofs of the defendant presented on the motion to vacate the order. The reason of the rule is that it calls upon the judge hearing the motion to prejudge the whole case against the plaintiff, if he vacates the order on such proofs. *Frost v. M'Carger*, 14 How. Pr. 131; *Solomon v. Waas*, 2 Hilt. 179; *Levins v. Noble*, 15 Abb. Pr. 475; *Barret v. Gracie*, 34 Barb. 20; *Cousland v. Davis*, 4 Bosw. 619; *Geller v. Seixas*, 4 Abb. Pr. 103.

There was some contention that the plaintiff could not recover as to a part of her claim for damages, because she had given her notes for the purchase price, which are still unpaid, and that until she pays the notes she cannot recover of the defendants. However this may be, it only goes to a small part of her claim and in no way prevents her from having an order of arrest as to that part of her. claim for which she may recover. If the point were well taken, which we do not decide, it would only be ground for reducing the amount of the bail on arrest, and would be no ground for setting aside the whole order.

*By the Court.*— The order of the circuit court is affirmed, and the cause is remanded for further proceedings according to law.